Mr. Rumley has already served more than 10 years for his crime of being a felon in possession of a firearm that exceeds the statutory maximum that applies unless he qualifies for the Armed Career Criminal Act enhancement. The district court got it right below when it granted Mr. Rumley's 2255 petition in December of 2018 holding that quote because Rumley no longer has three predicate offenses following Johnson he has established that he was improperly sentenced as an armed career criminal and is therefore entitled to relief. The problem came when the district court then instead of sentencing him between zero and ten years allowed the government to swap in substitute a previously unidentified and unproved conviction for unlawful wounding that was 40 years old and to sustain that Armed Career Criminal Act enhancement. That was in direct violation of this court's prior holdings in Hodge, Winbush and going back as far as the Parker case in 1994. The government gets one quote. There's a little bit of a difference and maybe you could address the difference between the procedural posture of this case and Hodge and I'll just tell you what I'm thinking of is in this case there was a new pre-sentence report. There was a de novo re-sentencing. He did have the opportunity to respond. He had notice to respond and the burden instead of being under the habeas standard was on the government whereas in Hodge it was the other way around. In Hodge they didn't get a new shot. So all the policies underlying Hodge which is notice and opportunity to respond and the burden of proof seemed to be different in this case. So tell me how the two, this case and Hodge fit together or don't fit together. Sure. Your Honor, of course you're correct. Hodge was decided during the collateral review initial process. Does the defendant, Mr. Hodge, get 2255 relief or not? And the burden is different in that case because Mr. Hodge has to show that he doesn't have three qualifying convictions anymore. But the reason that the concerns underlying Hodge mean more than just notice as the government would have it. The government suggests that well notice just means an opportunity to respond. But Mr. Hodge, in his case, had an opportunity to respond. The government in Hodge's 2255 proceeding identified it wanted to use this other conviction. The district court in Hodge gave Mr. Hodge and his counsel time to respond. Months went by. They argued about whether that conviction counseled or not. And still this court held in Hodge that wasn't enough notice. That's not what we meant. We go back to the Parker case and Hodge of course relied in part on Parker to say that the government gets one full and fair opportunity to put on whatever proof it has about a sentencing enhancement. And if they fail to put on the evidence of the original sentencing, then they don't get another bite at the apple at a resentencing later. And the Parker case, I apologize, Your Honor, was not a 2255 proceeding. That was a full resentencing. And yet we still have a situation where the government can't put on new evidence to prove up a sentencing enhancement. There's also the Catone case from this court, which I cited in my reply brief just from a few years ago, which held the same basic principle. That where the district court got the loss calculation wrong, then the government was stuck with the evidence that was at that sentencing. And the court looked at it and said, okay, yes, there's an error. We have to remand for resentencing. But the government had the burden to prove the loss at that original sentencing. Based on the evidence on that record, you can't prove it. So resentence without the loss enhancement. So we see it in the resentencing context as well. And I think that the Windbush case and the Hodge case also show that the holdings had to be more. Those are, maybe I'm wrong, but that last case, the resentencing on the loss amount was a direct appeal. That's correct. The distinction here is that's not a full resentencing. Here the sentence has been vacated and you have a full resentencing. And we know from subsequent Supreme Court cases that you can look at all sorts of things on a new resentencing. That you're entitled to look at performance in prison. You don't have to do it from the time of the original sentencing. You get to include information, prison disciplinary records, GED work, all the positives and the negatives. That's what a new sentencing is. And I took that to be Judge Niemeyer's point is that when you're having a full resentencing, that the court by statute is entitled to take into account all of the information that is pertinent. And why wouldn't that include a newly found conviction just like it would include any mitigation evidence that your client wanted to put forward? Your Honor, I think you're referencing the Pepper case, of course, which says that you can look at other information that's happened since the original sentencing. But the Pepper case is talking about 30… There's a limit to since. I mean, it's not a temporal limitation in Pepper, is it? It's not a temporal limitation, but it is discussing the 3553 sentencing factors the court considers, not enhancements. And I think there's an important distinction there. The court in Pepper is looking at 18 U.S.C. 3661. It says there's no limit on the information the court can consider when basically applying the 3553 factors. In that vein, in this case, the probation office did a new PSR. They started all over. That's about as far back as you can go in the sentencing process. And provided a new pre-sentence report, gave it to the defendant, the right to object, the right to make convictions, and so forth. This isn't where the prosecutor just stands up in court and says, oh, I've got another offense line in the back. They started a whole new process. It seemed to me that if the re-sentencing was de novo, brand new re-sentencing in this case, and the whole process from beginning to end is provided, these cases which talk about revisions because of errors to sentencings don't seem to be pertinent. Maybe I'm missing something. Well, I think there's two things, Your Honor. First, I'm not sure that there should have been a de novo re-sentencing based on the district court's order. The district court found that Mr. Rumley was no longer an armed career criminal, and that he was entitled to relief, and then that we re-sentenced him. At the time that that order was issued, Mr. Rumley hadn't yet served more than 10 years. So it would be appropriate to figure out, well, where between zero and 10 years should Mr. Rumley fall? Well, under the re-sentencing, obviously, if it turned out his sentence would have been 10 years under the re-sentencing, then his time served covered it and he would have been released. I agree, Your Honor. But the factor I'm trying to express is that 2255 proceedings are flexible. District courts have broad and flexible powers. You don't have to have a full re-sentencing to respond. Your argument is that you're not sure the district court wanted there to be this new PSR. Is that right? I think that's one argument, Your Honor. I think Hodge and Winbush apply. But what is your argument, then? If I didn't understand your argument, what was your argument to Judge Niemeyer? So I think that one interpretation the court could have, if the court finds that Hodge and Winbush don't apply, because that's a different context, is that the district court here only ordered – did not order a full de novo re-sentencing. When did you get that? Because the district court specifically found that he was not an armed career criminal. Right. And then said that he should get relief. And we know that in 2255 proceedings that – Is that all it did? What was the relief it granted? It said that he should be re-sentenced, but it didn't say a de novo re-sentencing where everything is vacated. Did it vacate the prior sentence? I do not believe the word vacate appears in that memorandum opinion, Your Honor. But when he got the report from the PSR, if the district court didn't want it, it could say, I didn't want that. For some other reason, I'm going to re-sentence somebody. So I don't know where that argument goes for you. Well, I think it's the most limited grounds this court could potentially use to overturn the conviction below. But I do think – and I think the district court was confused about what to do about the Hodge case. So in the briefing before the re-sentencing, the court wasn't sure how Hodge applied and whether that was appropriate or not. So it came down to the court not knowing if it could substitute in a conviction or not and, of course, concluding that it could. But I do think Hodge and Winbush can't be limited just to collateral review because both cases went back to the district court. Let the court, in its discretion, decide. We have this Hodge decision, and we don't want to run into the teeth of Hodge. So we're going to start over from the beginning, give everybody a fair opportunity to argue for the appropriate sentence. So we'll get a pre-sentence report. We'll hear counsel. We'll hear objections. We'll hear evidence. We'll take witnesses, and we'll re-decide. Could a court do that? I don't think they can, Your Honor, because this court has said the government gets one chance to prove up the sentencing enhancements at the original sentencing. Otherwise, the government could be incentivized to just try on one set of facts, see if that might work to prove an enhancement. If they lose that on appeal, let's try a different set of facts. We have a situation here where Mr. Hodge did have an unlawful wounding conviction that was identified as an unlawful. Yeah, but, you know, we give the government only one chance to convict, but yet on mistrials and so forth, we start over. That notion is a fair notion of not running a defendant into the ground with multiple opportunities, and if we see bad faith in that regard. But these laws and these cases arose in the interim by the Supreme Court, and so everybody's trying to abide and get his sentence in the correct fashion. It's not a gotcha case, and so it seems to me, just as in Double Jeopardy, we can have a resentencing if there's a good reason for a resentencing. And here we do have several Supreme Court decisions that require a resentencing, and in this case, it ends up being that's a whole new pre-sentence report. Well, with respect, Your Honor, the Hodge Court considered those very arguments and rejected them and said... Yes, but Hodge relied on the fact that the defendant had not been given notice, such notice we observed, because the PSR had not been amended. We have that notice here. It seems to me that your reliance on Hodge just doesn't... Over and above what Judge Niemeyer has said, you have to put your eggs in the Hodge basket. And Hodge says, the government failed to provide Hodge with sufficient notice of its intent to use this conviction to support an ACCA enhancement. Such notice is necessary to give the defendant an opportunity to contest the validity and the applicability of the prior convictions upon which a statutory sentencing enhancement is based. Your client had this notice. Your Honor, if Hodge was intended to only apply to the collateral review context, then Hodge would have been decided on harmless error. The government has no response to why Hodge wouldn't have been decided on harmless error, because if the court just could have said, well, it's not enough to block... Does anybody argue harmless error? I'm not aware that anyone argued harmless error. So that's a good reason why it wouldn't be decided on harmless error, though, right? I believe this court frequently would invoke harmless error, even if not... We can, but it is a reason why it wouldn't be. It's true. That is true. But the same thing would be true for a wind push. Can I go back to a different question? So we were talking about Pepper earlier, and you said 3661, and Pepper was talking about the 3553A factor. But when I read 3661, which Pepper relied on, in no way does it limit to the 3553 factors. In fact, no limitation shall be placed on the information concerning the background, character, or conduct of a person, da-da-da-da-da, for purpose of imposing an appropriate sentence. So what I don't understand is I get in the habeas context why Hodge applies, but it seems like to me that when trying to apply Hodge in the resentencing context, you run into 3661, as explained by Pepper, that says, no, no, no, you don't get to do this. There is no limitation on the sentencing, and that's what Pepper relies on, and it doesn't limit it in Pepper to 3553A factors, nor does the statute limit it that way. Well, I think, of course, the statute doesn't cross-reference. 3661 doesn't cross-reference specifically 3553, but by talking about the nature and circumstances of the offender, we're invoking 3553, and the Pepper case- The criminal history is part of the defendant's background, right? That's right, and it's completely fair for the district court to consider all of that information, the 3553 factors, anew. What the court can't do, according to the Parker decision, is let the government try to re-prove up an enhancement, and this is no small enhancement that the court can just disregard. This is a 15-year mandatory minimum. The government gets one bite at the apple to prove that kind of sentencing enhancement. Well, one bite at the apple doesn't get you very far, because even in the entire trial context, they only get one bite at the apple, and yet we give new trials on mistrials when mistakes are occurring, especially when it's raised by the defendant, and here the defendant challenged it based on intervening Supreme Court decisions, and so we're giving a new trial, or new sentencing, so to speak, and the notion that the government only gets one bite, that's a good notion. It applies not only in civil context with race judicata, but it's double jeopardy in the criminal context, and here, Hodge says you only give them one bite, but that doesn't mean that if there's intervening cases, and we're going to give them an entirely new trial again, at the defendant's request, that we shouldn't then give them full notice, opportunity to respond and impose the burden on the government. Your Honor, with respect, I think that the Wimbush decision, which we haven't talked much about today, also supports this argument, because there could be no prejudice to Wimbush's counsel's error in not objecting to an identified pre-offender predicate when there was another one just standing in the wings that the court could have substituted in. But that's exactly what Hodge says. Hodge says when you're considering prejudice, you don't get to go outside the record, right? And that makes sense in Wimbush, right? And Wimbush, in granting the 2255, has broad discretion in how to fashion the remedy it fashions, but that seems just to be consistent with Hodge in saying, if you're considering prejudice on habeas, you don't get to look outside the record. With permission, you can go ahead. Your Honor, I think that that is true except for the holding in Wimbush, where the court specifically remanded back to the district court and didn't say, go ahead, see if there are two pre-offender predicates. He gets a resentencing. This court instead said, resentence him without the pre-offender enhancement. And that's pursuant to the broad discretion that you talked about earlier in sort of trying to frame the order in this case as being there's broad discretion on what to order when granting. You can either order full resentencing or limited resentencing. We give broad discretion to judges to do that, and they use their discretion to do that, but they weren't required to. If I may, Your Honor, this court didn't give the district court broad discretion in Wimbush. It said they weren't identified. It used its own discretion, though. It used its own discretion, but that was based on the fact that the predicates. Yeah, but the fact that we chose to go one way doesn't mean it restricts that we couldn't go another way in circumstances like this where we had an entire new sentencing. We had a pre-sentence report. There was a debate and argument about the active predicates. Everybody was heard out. Okay, you've got some rebuttal, and we'll see you again. Ms. Hudson. Good morning. Jean Hudson for the United States. I'll turn very quickly to the Hodge argument, but very quickly before I do that, I wanted to note that if the court agrees with the government's arguments regarding Virginia unlawful wounding and Virginia robbery post-Stokeling, it would actually be unnecessary to reach the Hodge argument or any question of proof regarding the 1979 conviction because Rumley would still remain an armed career criminal based on his uncontested, malicious wounding. As I understand that, that's basically saying we should do what Dinkins did for Virginia, Virginia robbery. Correct. For the very same reasons. And in addition, the... Was robbery in the pre-sentence report? Yes, it was. And was it discussed? It was discussed. The government had filed a post-Stokeling. Well, first of all, going back further, the district court ruled according to Winston, which was the law of the circuit at the time, that the robbery conviction did not count. Then Stokeling came out. The government filed a motion to reconsider after Stokeling, and shortly before the first resentencing date, the district court found that it was an untimely motion and declined to reconsider. So that's what happened to the robbery. And for the district court, I mean, the district court was arguably still bound by Winston. Yes. Given that we had not overturned Winston, and at that time Dinkins had not come out, which maybe shed some light on what might end up happening to Winston. Turning back to Hodge, the government's position, of course, is that Hodge should not apply to bar the district court from considering Rumley's 1979 unlawful wounding conviction because, as the court has discussed already, the new pre-sentence report designated that conviction as a qualifying ACCA predicate and gave him notice prior to a full resentencing and the opportunity to object and fully litigate any issue regarding that conviction. The result is that the fairness and notice concerns that underlay the decision in Hodge are simply not present under the circumstances in this case. Rumley prevailed in his habeas appeal, and he got the appropriate remedy, which was to stand before the district court for reconsideration on his armed criminal status without the court using any residual clause offense. And that's what he got. And the court, as has already been discussed, by having a full pre-sentence report and a full resentencing, he was able to address that conviction. And in fact, as I pointed out in the government's brief, this case makes that point very well where he did litigate it and where the government may or may not have met its standard of proof regarding that conviction, given the circumstances that we've briefed on that point. But Rumley should not have a windfall in this case. He was appropriately back before the court after Johnson, but he should not, and again entitled to be reconsidered without the residual clause, but he shouldn't have the windfall of being protected by blinding the district court or requiring the court to blind itself to convictions which are otherwise qualifying predicates and would support his ACCA status nonetheless. I wanted to maybe make an argument regarding the Wimbush decision. I think maybe not as artfully as it could be said, but what I would like to say about the distinction between that case and Rumley is that I think in Wimbush, the court was dealing with a situation where if things had been done correctly in the first place, the outcome would have been different. And the same thing with Parker. In a case on direct appeal, when the defendant is challenging the government's sufficiency of evidence regarding that enhancement and gets on direct appeal, then the government says, well, wait, if we go back, we have more. There, if things had been done differently in the first place, the outcome would have been different for the defendant. And I think that's what the court found in Wimbush, and the court in Wimbush fashioned a remedy to address that. But with Mr. Rumley's situation, even had the government identified additional predicate offenses in the pre-sentence report, the result wouldn't have been any different at the original sentencing. He still would have been an armed career criminal. He still would have had a 2255 after Johnson and would have been back before the court regardless. So our position is that the remedy in this case, or sorry, that it would not be appropriate to extend the Hodge holding to circumstances beyond collateral review, that Hodge should not be an avenue for a defendant. Hodge is redressing a problem. Pardon me? Hodge is redressing a problem. Yes. And that problem doesn't appear to be here, at least from what I can see. There was a little bit of a gotcha. The court says you can't use that one. The government says, well, we got some more. Of course, that was never brought up. The government had a choice here. Not only did the government not have a choice because it was legal at the time it was entered, spring board changes, but then on the new sentencing, there was a whole new pre-sentence report to start off in. Now only has the opportunity to make his case. And did. And did, in fact, litigate those. So they're just the notice and fairness concerns are not here. And in addition to Judge Richardson's Just take me through the robbery thing. For some reason, I had some question about whether the robbery was properly before us. Am I wrong on that? Something lingered. I think he's asking about the cross-appeal issue. The government dismissed its cross-appeal, and the question is under Jennings whether that includes your relief under the robbery. So regarding the cross-appeal, our position is that we have not waived any right to bring the Stokelyn issue before the court at this point because we could not have appealed the district court's grant. You won the law. We won. And so therefore you wouldn't appeal, and you're allowed to rely on any other ground you advanced to support. Exactly. Because we're asking this court to affirm the district court's decision on an alternative ground. Does that go so far as to say that we could reverse the district court on a robbery issue? I don't think so. I think we're saying that we have a right to bring this argument up because we're asking the court to affirm the district court on an alternative ground. We may have waived our right to challenge the district court's grant of the 2255. That would be a situation where we would be asking the court to reverse the district court. We withdrew that cross-appeal. The defendant, of course, appealed after the district court decided that he, Mr. Rumley, was still an armed career criminal, and now the government stands before the court appropriately pointing out the Virginia robbery offense, which now after Stokelyn. Which you advanced to the court below, didn't you? We did. Okay. Okay. Thank you. Thank you. Anything else? Unless there's anything further, we rely on our brief. Thank you. Ms. Lorish? Thank you, Your Honors. I would like to address the Virginia robbery point, but first to just briefly respond to my colleague's argument that there would be some sort of windfall here if Mr. Hodge was allowed to have a gotcha on the district court. I think the Hodge case, again, addresses this very idea and says that we will not allow the government to change its position, now that one of the identified predicates can't do the job, that the government could have asked the sentencing court at the original sentencing to recognize additional qualifying ACCA convictions, but it didn't, and they weren't going to essentially allow the government to go back and relieve its burden that it had at the original sentencing. But I do think it's important, now that my colleague has brought up the Virginia robbery issue, that I think what the government is asking the court to do here is to say, yes, in this one single case, Virginia robbery is not an ACCA predicate, so we get 2255 released, but, oh, it is an ACCA predicate, so you're an unqualified criminal in the same case. And I think that that's inconsistent, and for that reason they should not have dismissed their cross appeal if they want to raise this issue. Well, the difficulty is always this procedural problem that if you're the winner below, you got the relief you wanted, they wanted to ACCA sentence, and they got that relief, but the court didn't use all the grounds they advanced. One of the grounds was robbery is also a thing. The court didn't rely on that, but the court erred in letting that go. But they don't have to appeal, and we basically said that on appeal, they can advance any other ground that they advance below in support of their position on appeal without cross appeal. I don't need any relief. Their positions, they don't need any relief. They just need affirmance. But there is the one possibility I've seen in the civilian context, on the civil side, is where people take conditional appeals, cross appeals, and I suppose they could take a conditional one saying if we lose, then we appeal this. I don't think that's ever been mandated. That is, counsel have done that, and I don't know if it's done in the criminal side at all or not. But they won below, so they wouldn't appeal a win. Well, Your Honor, in this particular case, they won on the ACCA resentencing, of course, but the district court specifically said I'm rejecting your Virginia robbery argument for the same reasons I just rejected it in granting the 2255, and they actually filed the cross appeal before they decided to dismiss it. So I think that distinguishes it, but I do. I think that's a good point. I think that's a twist, which makes it a little more interesting, is that the district court actually erred in rejecting it rather than just not selecting it. And I don't know quite what the answer should be, and you're telling us we shouldn't consider the robbery. Well, I do want to make the point, though, as I've set out in the reply brief, that even if the court considers robbery, the Dinkins case does not address Virginia robbery by intimidation. Stoeckling doesn't address Virginia robbery by intimidation. And I'm going to, in my last two minutes, quickly point out the two things. I think it does. I think, if you remember, look at Dinkins. I think by putting a person in fear is the word they use, I think, isn't it? I know Your Honor is quite familiar with the opinion, but there's a footnote at the end that says we recognize that North Carolina robbery by intimidation is an alternative means of committing this offense. It wasn't raised or briefed by the parties in Dinkins, and the court kind of summarily noted that, well, putting in fear is enough. But the common law definition of robbery was virtually identical and is identical to what the Supreme Court addressed, too. Everybody's using about the same definition of robbery that comes out of the textbooks, so to speak. I agree with respect to robbery by force, but I'm just going to point out, as I have in the reply brief, the two ways that Virginia robbery by intimidation is different, Your Honor, and that's because the Virginia Supreme Court has said intimidation in Virginia does not require a threat of any kind, and secondly, because we can tell someone's intimidated based on the subjective experience of fear a person has. There's no ordinary reasonable person standard. In each of the cases this court's considered recently about offenses that can be committed by intimidation, that's the McNeil case, the doctor case about South Carolina robbery, the Drummond case about South Carolina domestic violence. In each of those cases, there was a clear law that intimidation in those contexts had to mean a threat of violence, and secondly, that it was judged based on a reasonable person standard. Here we have the Virginia Supreme Court in the Sutton case clearly saying that those things do not apply for Virginia robbery by intimidation. So I don't think that the Winston case expressly reserved that issue, didn't reach robbery by intimidation, and it's not addressed by the Stokeland case either because that was just based... Well, is that the robbery involved here by intimidation or is it by force? Well, it's alternative means, Your Honor, so under if it... Well, that's another issue if that's it, but what was the actual conviction here? Well, I don't think we know. It was never... no evidence was presented about the robbery, but Winston has clearly held that it is, and the government conceded, those are indivisible means of committing the same offense. So I see my time has expired. Thank you. Thank you. We'll adjourn court for the day and come down and recounsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Julius N. Richardson